**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

FILED
ERKS OFFICE

2004 JUN -1  P 3:40

| | |
|---|---|
| In re: | ) |
| | ) |
| USGen New England, Inc., | ) |
| Debtor. | ) |
| | ) |
| | ) |
| USGen New England, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Bear Swamp Generating Trust No. 1 LLC, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Case No. 03-30465 (PM) STRICT COURT
DISTRICT OF MASS

Chapter 11

Adv. Proc. No. 04-01001

## HSBC BANK USA'S OPPOSITION AND MEMORANDUM OF REASONS (1) IN OPPOSITION TO THE MOTION OF MAINSTREAM ASSOCIATES INC. TO QUASH SUBPOENA OR FOR A PROTECTIVE ORDER AND (2) IN SUPPORT OF HSBC BANK USA'S CROSS-MOTION FOR AN ORDER COMPELLING DISCOVERY

HSBC Bank USA, solely in its capacity as successor Pass Through Trustee and successor Lease Indenture Trustee ("HSBC"), through its undersigned counsel, respectfully submits this Opposition and Memorandum of Reasons in Opposition to the Motion of Mainstream Associates Inc. to Quash Subpoena or for a Protective Order and in Support of HSBC Bank USA's Cross-Motion for an Order Compelling Discovery.

### Preliminary Statement

Third-party Mainstream Associates Inc. ("Mainstream") has moved this Court to quash a subpoena issued by HSBC on May 6, 2004 on the grounds that the subpoena allegedly seeks the testimony of an unretained expert in contravention of Rule 45(c)(3)(B)(ii) of the Federal Rules of

40071026v2 LITDOCS:554047.1

Civil Procedure.[1]  Mainstream has objected to the production of documents on similar grounds. The Motion to Quash, and Mainstream's objections to the production of documents, are without merit. The subpoena seeks factual testimony regarding valuation work performed by Mainstream in 2000 and regarding Mainstream's communications with plaintiff USGen New England, Inc. and others in the course of preparing its valuation report. That information is relevant to litigation that is pending in the Bankruptcy Court in the District of Maryland. In fact, three other appraisal firms have already responded to similar calls for testimony and for the production of documents relating to their past valuation work. Only Mainstream has sought to block the requested discovery.

## Facts

HSBC is a defendant in an adversary proceeding filed by USGen New England, Inc. ("USGen" or "the Debtor") in the United States Bankruptcy Court for the District of Maryland (Case No. 03-30465 (PM), Chapter 11, Adv. Proc. No. 04-01001) ("the Adversary Proceeding"). The Adversary Proceeding seeks to resolve the parties' disputes over the characterization of a certain "sale/leaseback" transaction that occurred in November 1998 and that involved a pumped storage hydroelectric facility, herein referred to as the "Bear Swamp Facility" or the "Facility." The parties disagree as to whether that transaction should be treated as a "true lease" or as a disguised secured financing for purposes of Sections 365 and 502 of the Bankruptcy Code.

The reasonableness and, indeed, the bona fides of certain other valuations of the Facility

---

[1]   Motion of Mainstream Associates Inc. to Quash Subpoena or For a Protective Order, Case No. 03-30465, Chapter 11, Adv. Proc. No. 04-01001 (U.S. Bankruptcy Court, District of Maryland (Greenbelt Division)), filed May 18, 2004 ("the Motion to Quash").

2

that were prepared at the time of the "sale/leaseback" transaction and relied upon by the Debtor and others are an important factor in the determination of whether the "sale/leaseback" constitutes a true "lease" or a secured financing. Representatives of three other valuation firms who did work with respect to the Facility have been subpoenaed and have produced documents and testimony: Deloitte & Touche LLP, Arthur Consulting Group and Black & Veatch.

Mainstream is a valuation and appraisal firm. Mainstream prepared a "Valuation and Appraisal Report" for the Bear Swamp Facility, effective January 1, 2000 ("the Valuation"), which is proximate in time to the other valuations. Mainstream submitted the Valuation to the town of Florida, Massachusetts for *ad valorem* tax assessment purposes. HSBC believes (and the proposed deposition may confirm) that the Valuation was in fact solicited and paid for by the Debtor and its counsel. Discovery has revealed, for example, that a similar report prepared by Black & Veatch, and addressed to officials of the town of Rowe, Massachusetts, was in fact solicited and paid for by the Debtor and its counsel.

Mainstream's Valuation was produced by the Debtor during discovery. Mainstream's valuation conclusions are directly at odds with the valuation that the Debtor obtained in connection with the sale/leaseback transaction. Communications among Mainstream, the Debtor and the Debtor's agents and advisors, as well as Mainstream's own evaluative process and inquiries, may constitute or at least lead to relevant and admissible information regarding the value of the Facility and also regarding the Debtor's own belief that the Facility did not truly have the value that was nominally ascribed to it for purposes of the sale/leaseback transaction.

On May 6, 2004, HSBC issued a subpoena *ad testificandum* and *duces tecum* under Rules

3

30(b)(6) and 45 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to Mainstream ("the Subpoena"),[2] setting a deposition and document production date for May 19, 2004. On May 18, 2004 – the day before the deposition was to take place – Mainstream, through its principal, Mr. George Lagassa, filed the Motion to Quash pursuant to Fed. R. Civ. P. 45(c)(3)(B)(ii).[3] The Motion to Quash references only the subpoena *ad testificandum*. *See* Motion to Quash at 1. However, counsel for Mainstream served objections to the subpoena *duces tecum* by fax on counsel for HSBC on May 18, 2004. The objections are attached hereto as Exhibit A. The objections are grounded on the same arguments as those proffered in support of the Motion to Quash. In the interest of judicial efficiency, HSBC requests that the Court consider Mainstream's objections to both the subpoena *ad testificandum* and the subpoena *duces tecum* in ruling on this Motion to Quash and on HSBC's Cross-Motion for an Order compelling discovery.

The discovery cut-off date for the Adversary Proceeding was originally scheduled for May 21, 2004 pursuant to a Scheduling Order entered on March 16, 2004 by the court in which the Adversary Proceeding is pending. HSBC has successfully moved for an order extending the deposition discovery deadline to June 15, 2004 and allowing HSBC to depose Mainstream before the new deadline if this Court denies the Motion to Quash. The order extending the discovery deadline is attached hereto as Exhibit B. Trial in this Adversary Proceeding is scheduled to commence on June 21, 2004.

## **Argument**

---

[2]  The Subpoena is Exhibit 1 to the Motion to Quash.

[3]  The Motion to Quash suffers a number of procedural defects, including the failure to certify that counsel have conferred and attempted in good faith to resolve or narrow the issue (Local Rules 7.1(a)(2) and 37.1(b)) and the failure to file a memorandum of reasons, including citation of

4

Mainstream contends that the Subpoena should be quashed under Fed. R. Civ. P.
45(c)(3)(B)(ii) for improperly requiring the "disclosure of an unretained expert's opinion."
Motion to Quash at 2. In fact, however, the Subpoena does not seek any discovery beyond purely
factual information or opinions previously formed by Mainstream in connection with the
Valuation, for which there is no reason to believe Mainstream was not fully compensated. For
these reasons and others, the Subpoena does not fall within the parameters of Rule
45(c)(3)(B)(ii). The Motion to Quash should be denied, and the Cross-Motion for an Order
Compelling Discovery should be granted.

## I.    The Subpoena Does Not Require Disclosure of an Unretained
## Expert's Opinion Under Fed. R. Civ. P. 45(c)(3)(B)(ii).

Fed. R. Civ. P. 45(c)(3)(B)(ii) provides: "On timely motion, the court by which a
subpoena was issued shall quash or modify the subpoena if it . . . requires disclosure of an
unretained expert's opinion or information not describing specific events or occurrences in
dispute and resulting from the expert's study made not at the request of any party." Fed. R. Civ.
P. 45(c)(3)(B)(ii).    Courts have absolute discretion in determining whether to apply the
protections of Rule 45(c)(3)(B)(ii). *See Arkwright Mutual Ins. Co. v. National Union Fire Ins.
Co.*, 148 F.R.D. 552, 557 (S.D. W. Va. 1993). In exercising this discretion, Courts have
considered: "[(i)] the degree to which the expert is being called because of his knowledge of the
facts relevant to the case rather than in order to give opinion testimony; [(ii)] the difference
between testifying to a previously formed or expressed opinion and forming a new one; [(iii)] the
possibility that, for other reasons, the witness is a unique expert; [(iv)] the extent to which the

---

supporting authorities, in support of its motion (Local Rule 7.1(b)(1)).

calling party is able to show the unlikelihood that any comparable witness will willingly testify; and [(v)] the degree to which the witness is able to show that he has been oppressed by having continually to testify." *See* Fed. R. Civ. P. 45, Advisory Committee's notes on 1991 amendment (quoting *Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir. 1976)); *see also Arkwright Mutual Ins. Co.*, 148 F.R.D. at 558 n.12; *Young v. United States*, 181 F.R.D. 344, 348 (W.D. Tex. 1997).

A review of the five *Kaufman* factors indicates that the Motion to Quash should be denied.

*First*, the Subpoena primarily seeks testimony concerning facts surrounding Mainstream's retention in connection with the Valuation and any communications Mainstream may have had with the Debtor or others regarding the value of the Bear Swamp Facility, property taxes assessed with respect to the Bear Swamp Facility and the real versus personal property nature of the Bear Swamp Facility (another issue in the pending adversary proceeding). *See* Motion to Quash Ex. 1 at 9.

*Second*, to the extent the Subpoena seeks any opinion testimony, such testimony only concerns opinions previously formed and set forth in the Valuation. *See id.* (seeking testimony on subject matters including "2. Report(s) and other Documents prepared or generated by You with respect to the value of the Facility, and the Documents and information considered by You in producing such report(s) and Documents" and "4. Your review and consideration of any valuations prepared by or on behalf of USGen in connection with the November 1998 Transaction."). The Subpoena in no way requests Mainstream to form or express new opinions. In fact, HSBC has retained an independent, paid valuation expert to formulate and express new

6

opinions for the purposes of the Adversary Proceeding.

*Third*, a representative of Mainstream is uniquely able to testify as to Mainstream's previously formed (and previously paid for) opinions concerning the value of the Bear Swamp Facility at the time of the Valuation and is potentially able to testify as to the Debtor's communicated opinion of the value of the Bear Swamp Facility at the time of the Valuation. Although Mainstream asserts that "the underlying valuation information" is "readily available to [HSBC]" via other appraisals that were performed for the Bear Swamp Facility (*see* Motion to Quash at 2), as noted above, the bona fides of those earlier valuations is one of the central matters in dispute. Information regarding Mainstream's communications with the Debtor and the Debtor's representatives simply is not available from other appraisal firms.

*Fourth*, because the valuation performed by Mainstream and Mr. Lagassa constitutes their roughly contemporaneous views and because all such views are expected to play a role in demonstrating the unreasonable nature of the valuations relied upon by the Debtor, there is no substitute for Mainstream and Mr. Lagassa.    To the extent that either had relevant communications with the Debtor or its agents or advisors, such evidence is unique.

*Last*, Mainstream cannot dispute that it has in no way been "oppressed by having continually to testify." No representative from Mainstream, including Mr. Lagassa, has testified in any capacity in this Adversary Proceeding and HSBC is the only party who has sought Mainstream's deposition. The requested deposition should in no event last more than one day.

Because all five of the factors that inform the Court's discretion weigh in favor of finding Rule 45(c)(3)(B)(ii) inapplicable, the Court should deny the Motion to Quash and should order

7

Mainstream to make a representative available for deposition prior to the June 15 discovery cut-off in this Adversary Proceeding. *See Arkwright Mutual Ins.*, 148 F.R.D. at 558 (denying motion to quash subpoena under Rule 45(c)(3)(B)(ii) where subpoena only sought expert's testimony as to facts and previously formed opinions regarding fire investigation).

For the same reasons, Mainstream's objections to the production of documents should be overruled, and Mainstream should be ordered to comply with the document requests set forth in the Subpoena. Among other things, Mainstream's communications with the Debtor and its representatives may constitute important evidence regarding the Debtor's own lack of belief in the validity of the valuations that formed the basis of the sale/leaseback transaction.

## II.     Denying the Motion To Quash Serves the Purposes of Rule 45(c)(3)(B)(ii).

Rule 45(c)(3)(B)(ii) was designed to prevent the "taking" of intellectual property without just compensation. *See Arkwright Mutual Ins. Co.*, 148 F.R.D. at 557 ("Compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services . . . Arguably the compulsion to testify can be regarded as a 'taking' of intellectual property." (quoting Rule 45 Advisory Committee's notes to the 1991 amendment)). Thus, purely factual information sought in the Subpoena is not protected by Rule 45(c)(3)(B)(ii). *See id.* ("Discovery of [ ] purely factual information does not comprise[ ] 'intellectual property' . . . and is therefore not protected by Rule 45(c)(3)(B)(ii)."). Further, because Mainstream has not presented any reason to believe it was not fully compensated for its work pertaining to the Valuation when it was originally performed, it is not the type of "unretained expert" Rule 45(c)(3)(B)(ii) was designed to protect. *See id.* ("Given [his] prior compensation, [the expert]

8

will not suffer a ''taking' of intellectual property' by appearing at the noticed deposition and testifying to the opinions he has already formulated at [the hiring party's] expense.'').

## Conclusion

For the foregoing reasons, HSBC respectfully requests that the Court enter an order denying the Motion of Mainstream Associates Inc. to Quash Subpoena or For a Protective Order and granting HSBC's Cross-Motion for an Order requiring that Mainstream produce documents responsive to the Subpoena and make a representative available for deposition before the June 15 discovery cut-off date, and that the Court grant such other and further relief as may be just and proper.

9

Dated: June 1, 2004

Respectfully submitted,

**HSBC Bank USA**

Charles L. Solomont  BBO# 557190
Scan C. Flynn  BBO# 650506
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
Tel: (617) 951-8000
Fax: (617) 951-8736

-and-

Patrick S. Coffey
Scott J. Fisher
GARDNER CARTON & DOUGLAS LLP
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel: (312) 569-1000
Fax: (312) 569-3000

- and-

John B. Missing
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W. Ste. 1100E
Washington, DC 20004
Tel: (202) 383-8000
Fax: (202) 383-8118

10

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Sean C. Flynn, hereby certify that counsel for HSBC Bank USA has contacted counsel for Mainstream Associates, Inc. in an effort to resolve or narrow the issues presented in this motion.

Sean C. Flynn

## CERTIFICATE OF SERVICE

I, Sean C. Flynn, hereby certify that a true and correct copy of the foregoing document was served on all counsel in this matter by first-class mail, postage prepaid, on or about June 1, 2004.

Sean C. Flynn

11